UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS,<br><br>           Petitioner,<br><br>    v.<br><br>GAVIN NEWSOME,<br><br>           Respondent. | No.  2:20-cv-1557 AC P<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

**I.**     **Background**

Petitioner Andre Wells is a state prisoner at Mule Creek State Prison (MCSP) under the authority of the California Department of Corrections and Rehabilitation (CDCR).  This case was opened as a habeas corpus action based on petitioner's submission of a letter to the court entitled "Emergency Habeas Corpus, My Life is in Jeopardy from CDCR and Conspirators Mental Health Staff & Inmates."  ECF No. 1.

By order filed August 6, 2020, the undersigned (1) informed petitioner how to properly commence a habeas corpus action and request in forma pauperis status, and (2) directed the Office of the California Attorney General (AG) to specially appear for the purpose of investigating and responding to petitioner's safety concerns.  ECF No. 3.

////

////

On August 13, 2020, pending receipt of the AG's report, petitioner[1] filed a civil rights complaint asserting putative RICO, discrimination and retaliation claims, and requested another application to proceed in forma pauperis. ECF No. 8.

On August 19, 2020, the AG submitted a statement that included a declaration from petitioner's clinician, LCSW S. Jacques, who stated that petitioner receives mental health treatment at the Enhanced Outpatient Program (EOP) level of care, receives services through the Developmental Disability Program (DDP), and is assigned to a single cell. ECF No. 9. LCSW Jacques reported that she meets weekly with petitioner and met with him on August 17, 2020 in response to the court's order. Jacques reported that petitioner did not express any specific safety concerns but that he generally feared retaliation from staff for filing lawsuits or submitting inmate appeals. Jacques completed a suicide risk assessment and determined that Wells was not in imminent danger of self-harm. Petitioner objected to the AG report and LCSW Jacques' evaluation on August 31, 2020. ECF No. 12.

Meanwhile, on August 10 and 21, 2020, petitioner filed requests for appointment of counsel, ECF Nos. 6, 10, which this court denied without prejudice as premature, ECF Nos. 7, 13. On August 21, 2020, petitioner filed a statement (entitled "supplement") informing the court that he continued to feel unsafe around some correctional officers but that some inmates were now being nicer to him. ECF No. 11. The undersigned informed petitioner that the court lacks authority to consider any matters in this case until petitioner has been granted in forma pauperis status or paid the filing fee, and a cognizable pleading has been filed. ECF No. 13 at 3.

On September 14, 2020, petitioner filed a motion to proceed in forma pauperis. ECF No. 16. On September 21, 2020, upon the court's request, CDCR forwarded a copy of petitioner's most recent prison trust account statement. ECF No. 19.

On September 25, 2020, petitioner filed a motion for preliminary injunction/temporary restraining order. ECF No. 20. Petitioner filed similar requests on September 2 and 4, 2020 and
////

---

[1] The undersigned refers to Mr. Wells as "petitioner" based on his initial filing and the Clerk's consequent characterization of this case as a habeas action.

1  on October 2, 2020.  ECF Nos. 14, 15, 21.  He filed two miscellaneous matters on September 14,
2  2020.  ECF Nos. 17, 18.
3        The undersigned now recommends the denial of petitioner's motion for preliminary
4  injunctive relief.  Petitioner will be directed to inform the court whether he requests the
5  conversion of this case to a civil rights action and, if so, directs him to file a First Amended
6  Complaint.  Finally, this order admonishes petitioner to refrain from filing further documents in
7  this case unless expressly authorized by court order or the applicable federal rules.

8        **II.**     **Petitioner's Motion for Preliminary Injunctive Relief**

9        Petitioner requests issuance of an "emergency restraining order to stop CDCR from
10  utilizing SNY [Special Needs Yard] inmates from poisoning me with (apond belief) strict nine,
11  rat poison and or some type of poison."  ECF No. 20 at 1 (sic).  Petitioner restates this primary
12  concern in multiple ways throughout this motion and in related filings.  See generally ECF No.
13  20; see also ECF Nos. 14, 15, 21.

14        **A.**     **Legal Standards**

15        "A preliminary injunction is an 'extraordinary and drastic remedy,' 11A C. Wright, A.
16  Miller, & M. Kane, Federal Practice and Procedure § 2948, p. 129 (2d ed.1995) [] (footnotes
17  omitted); it is never awarded as of right, Yakus v. United States, 321 U.S. 414, 440 (1944)."
18  Munaf v. Geren, 553 U.S. 674, 689-90 (2008).  "The sole purpose of a preliminary injunction is
19  to "preserve the status quo ante litem pending a determination of the action on the merits."  Sierra
20  Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (citing L.A. Memorial Coliseum
21  Comm'n v. NFL, 634 F.2d 1197, 1200 (9th Cir.1980)); see also 11A Charles Alan Wright &
22  Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010)
23        In evaluating the merits of a motion for preliminary injunctive relief, the court considers
24  whether the movant has shown that "he is likely to succeed on the merits, that he is likely to
25  suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
26  favor, and that an injunction is in the public interest."  Winter v. Natural Resources Defense
27  Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009)
28  (quoting Winter).  The propriety of a request for injunctive relief hinges on a significant threat of

1  irreparable injury that must be imminent in nature.  Caribbean Marine Serv. Co. v. Baldridge, 844
2  F.2d 668, 674 (9th Cir. 1988).  A preliminary injunction is appropriate when a plaintiff
3  demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply
4  toward the plaintiff, . . . assuming the other two elements of the Winter test are also met."
5  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).
6        An injunction against individuals who are not parties to the action is strongly disfavored.
7  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).
8        Additionally, in cases brought by prisoners involving conditions of confinement, any
9  preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the
10 harm the court finds requires preliminary relief, and be the least intrusive means necessary to
11 correct the harm."  18 U.S.C. § 3626(a)(2).

          **B.     Discussion and Recommendation**

13       As discussed more fully below, there is no viable pleading before the court in this case.
14 There are no cognizable claims, and no identifiable defendants.  These deficiencies preclude
15 meaningful analysis of the Winter factors.  Because there are no cognizable claims before the
16 court, it is impossible to determine whether there are serious questions going to the merits.
17 Petitioner's wide-ranging allegations that CDCR itself and unidentified CDCR officials are
18 attempting to poison him, are actively poisoning him, and are directing other inmates to poison
19 him, are not susceptible to a narrowly drawn order that would correct the alleged harm while this
20 case proceeds on the merits.  Although it is clear that petitioner is alleging a significant threat of
21 irreparable injury, it is equally clear that the generalized preliminary relief he seeks would not
22 necessarily alleviate the alleged threat.
23       For these reasons, the undersigned recommends that the pending motion for preliminary
24 injunctive relief (ECF No. 20) be denied at this time.

          **III.    Petitioner Must Make an Informed Decision Whether to Convert**
                   **This Putative Habeas Corpus Case to a Civil Rights Action**

27       It appears that petitioner is now attempting to pursue a civil rights action.  If so, petitioner
28 must expressly request the conversion of this case from a putative habeas corpus action to a civil

rights action. These two distinct types of actions involve different standards of substantive review and different remedies, and bear different filing costs that carry different potential consequences.

### A. Consequences of Conversion

Petitions for writs of habeas corpus may be filed by persons "in custody pursuant to the judgment of a State court," and "only on the ground" that the prisoner is in custody in violation of federal law. 28 U.S.C. § 2254(a). Available remedies include modification of a prisoner's sentence, release from confinement, or retrial of the underlying criminal case. In contrast, civil rights actions filed under 42 U.S.C. § 1983 challenge the conditions of a prisoner's confinement, not the fact or duration of that confinement, and available remedies include monetary damages and appropriate injunctive relief.

If a prisoner qualifies for in forma pauperis status, the filing fee of $5.00 for a habeas action is waived, while the filing fee of $350.00 for a civil rights action is paid over time from the prisoner's trust account. Obtaining in forma pauperis status to pursue a civil rights action may impact the prisoner's eligibility for in forma pauperis status in future civil rights cases. See 28 U.S.C. § 1915(g) (prohibiting in forma pauperis status to prisoners who have had three or more cases dismissed as frivolous, malicious or for failure to state a claim). The same potential consequence does not apply to grants of in forma pauperis status in subsequent habeas filings.

"A district court may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner." Nettles v. Grounds, 830 F.3d 922, 936 (2016) (en banc). "'If the complaint is amenable to conversion on its face, meaning it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.'" Id. (quoting Glaus v. Anderson, 408 F.3d 382, 388 (7th Cir. 2005)).

With the exception of the initial document petitioner filed in this case, which he characterized as a request for habeas relief, petitioner's filings appear to challenge only the conditions of his confinement and thus indicate that he is attempting to pursue a civil rights

5

action. The recently filed complaint seeks petitioner's release from prison and "20 million dollars." ECF No. 8 at 6. Although release from prison is not a generally available remedy in a civil rights action, monetary damages may be pursued.

Plaintiff's initial request for habeas relief cannot be converted to a civil rights complaint because it does not state a coherent claim or name correct defendants. The putative complaint, ECF No. 8, is also deficient for the reasons explained below. Accordingly, if petitioner wishes to convert this case to a civil rights action in light of the consequences outlined above, he must expressly make such request on the form provided with this order and file the form together with a proposed First Amended Complaint. Thereafter the court will address the pending motion to proceed in forma pauperis (ECF No. 16).

## B.  The Complaint Fails to State a Cognizable Claim

The putative complaint (ECF No. 8) identifies three claims, none of which are cognizable as framed. The first claim is premised on the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, based on allegations of "a pervasive pattern within all CDCR culture of criminal activity of custody and the covering up of the activity." ECF No. 8 at 3.[2] "To state a civil RICO claim, plaintiffs must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's 'business or property.'" Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)). "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. Personal injuries are not compensable under RICO." Id. (citation omitted). As a result, "[c]ivil rights violations . . . do not fall within the statutory definition of 'racketeering activity.'" Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997).

---

[2] Petitioner makes wide ranging allegations including "assaults on inmates, falsified documents, lost, misplaced and mishandled appeals;" that correctional officers "use drugs cellphones etc. to control SNY prison gangs and use them to attack other inmates;" "embezzling of third-party beneficiary funds;" and "conspiracy between mental health, medical and CDCR to deny inmates rights." ECF No. 8 at 3. Petitioner alleges that he's been retaliated against for appealing these matters, assaulted, received multiple false Rules Violation Reports (RVRs), and is "overly stressed" because "[i]t's super hard to navigate the prison environment . . . [which] is corrupt." Id.

Because petitioner cannot show a concrete financial loss to his business or property as a result of the broadly alleged conduct, his allegations fail to state a cognizable RICO claim. This defect cannot be cured by amendment. If petitioner realleges a RICO claim in an amended complaint, the undersigned will recommend its dismissal.

The second claim alleges discrimination on the ground that "mental health inmates" are not assigned the same jobs or other opportunities as "regular inmates." ECF No. 8 at 4.[3] Petitioner cannot pursue a claim on behalf of other prisoners. See McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (a litigant appearing pro se has no authority to represent anyone other than himself). Moreover, "[p]risoners have no constitutional right to a prison job or educational opportunities. Prisoners have no protected constitutional right to any work assignment." Easley v. Jett, 29 F.3d 631 (9th Cir. 1994) (citations omitted).

Liberally construed, petitioner's allegations suggest an equal protection claim on the ground that he, as a member of the putative class of prisoners receiving mental health care, is denied programming offered to prisoners who are not members of that class. The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). Challenges to state policies premised on a "suspect classification" (e.g. race, religion or national origin) or that burden the exercise of a fundamental constitutional right are analyzed under a "strict scrutiny" standard requiring that the challenged policy be narrowly tailoring to serve a compelling governmental interest. See e.g. Ball v. Massanari, 254 F.3d 817, 823 (9th Cir. 2001) (citation omitted). Challenges premised on a "quasi-suspect classification" (e.g. gender or illegitimacy) are analyzed under an "intermediate" scrutiny standard requiring that the challenged

---

[3] Petitioner explains, ECF No. 8 at 4:

> Mental Health inmates are discriminated on with respect to vocational jobs. At Salinas Valley they only let us come out on porter job for 15 mins. We are last for canteen, we do not get cleaning supplies, they treat us really bad as if we are the problem. CDCR has conspired with mental health to . . . not report violations or mistreatment of patients. Clinicians violate their Hippocratic oaths at their obligations to their patients.

7

1 policy bear a substantial relationship to an important governmental interest. Id. (citation omitted).

2 However, "neither prisoners nor mentally ill persons qualify as a protected class for equal protection purposes." Garrett v. Gastello, 2020 WL 3963749, at *6, 2020 U.S. Dist. LEXIS 122683 (C.D. Cal. July 13, 2020) (Case No. 20-cv-4057 PA (JEM)) (citing City of Cleburne, 473 U.S. at 445-46, and Heller v. Doe by Doe, 509 U.S. 312, 321 (1993)); accord, Ardds v. Hicks, 2020 WL 4547119 at *8, 2020 U.S. Dist. LEXIS 140969 (E.D. Cal. Aug. 6, 2020) (Case No. 1:18-cv1324 DAD BAM PC), report and recommendation adopted, 2020 WL 5203484, 2020 U.S. Dist. LEXIS 159475 (E.D. Cal. Sept. 1, 2020); Wells v. Kendall, 2019 WL 1787172, at *6, 2019 U.S. Dist. LEXIS 69818 (E.D. Cal. Apr. 24, 2019) (Case No. 2:17-cv-2709 AC P) (citations omitted).

Where, as here, "a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state objective." Coakley v. Murphy, 884 F.2d 1218, 1221–22 (9th Cir. 1989). Therefore, even if, as a matter of prison policy, inmates receiving mental health treatment are not offered the same jobs or programming opportunities offered to other prisoners, the policy "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).[4] Petitioner alleges no facts to support an inference that the differential treatment he challenges lacks a legitimate penological purpose. Cf. e.g. Washington v. Harper, 494 U.S. 210, 225 (1990) (prison officials have a "duty to take reasonable measures for the prisoners' own safety").

Because there are no federal constitutional grounds upon which petitioner can challenge his work assignment, either individually or on behalf of other prisoners, his allegations fail to

---

[4] In Turner, the Supreme Court identified four factors for determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally;" and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482 U.S. at 89-90.

state a cognizable claim. These deficiencies do not appear curable. If petitioner realleges a discrimination claim in an amended complaint based only on his status as a prisoner receiving mental health care, the undersigned will recommend its dismissal.

Third and finally, petitioner makes wide-ranging allegations in support of a putative retaliation claim. Petitioner alleges:

> I've experienced overwhelming issues with inmates that have been stimulated and instigated by custody. I've received multiple falsified 115s and falsified medical records to get me removed from the DDP program so CDCR can retaliate set up for fake assaults without San Quentin Law Office interfering. My legal mail tampered with, not being sent to San Quentin Law Office and fake letters sent back to me to make me believe they got my letter. [State how you were injured:] Suicide attempts, being assaulted, violated rights, discouraged from redressing the government.

ECF No. 8 at 5.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted).

Petitioner's allegations do not identify his protected conduct, how any specific adverse actions were in response to such protected conduct, or whose conduct he challenges. Therefore, petitioner's allegations do not state a cognizable retaliation claim. Subject to the requirements set forth below in filing a proposed First Amended Complaint, petitioner may again attempt to state a retaliation claim in an amended complaint.

### C.  Leave to File a First Amended Complaint

Due to the deficiencies in petitioner's complaint, the case is not suitable for sua sponte conversion to a civil rights action. See Nettles, 830 F.3d at 936. Should petitioner choose to convert this case to a civil rights action, he must so inform the court and file a proposed First Amended Complaint (FAC). Petitioner is informed of the following requirements for stating a cognizable claim in a FAC.

1          Section 1983 authorizes a federal civil rights action against any "person" who acts under
2    color of state law.  See 42 U.S.C. § 1983.  "Persons" under Section 1983 do not include a state or
3    its entities, or state employees acting in their official capacities.  See Will v. Michigan Dept. of
4    State Police, 491 U.S. 58 (1989); see also Kentucky. Graham, 473 U.S. 159 (1985) (the Eleventh
5    Amendment bars damages action against a state and its entities in federal court).  Therefore, to
6    state a cognizable civil rights claim under Section 1983, a plaintiff must allege: (1) the violation
7    of a specific federal constitutional or statutory right; and (2) that the violation was committed by a
8    person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  A plaintiff
9    must allege facts showing each defendant's personal involvement in the alleged violation.
10   Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  Officials cannot be sued on a respondeat
11   theory they are liable for the conduct of their subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679
12   (2009).  Rather, a supervisor may be held liable for the acts of his or her subordinates only if the
13   supervisor participated in or directed the violations, or knew of the violations of subordinates and
14   failed to act to prevent them.  See Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citations
15   and internal quotation marks omitted).

16          Cognizable claims must allege an actual connection or link between the challenged
17   conduct of specifically identified, individual, defendants and the violation of plaintiff's rights.
18   See Monell v. Department of Social Servs., 436 U.S. 658 (1978).  "A person 'subjects' another to
19   the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative
20   act, participates in another's affirmative acts or omits to perform an act which he is legally
21   required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588
22   F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The
23   inquiry into causation must be individualized and focus on the duties and responsibilities of each
24   individual defendant whose acts or omissions are alleged to have caused a constitutional
25   deprivation.").  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative
26   link or connection between a specific defendant's actions and the claimed deprivation.  Rizzo v.
27   Goode, 423 U.S. 362, 371 (1976).  Vague and conclusory allegations of official participation in
28   ////

civil rights violations are not sufficient. <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

A FAC must be complete in itself without reference to any prior pleading; each claim and the involvement of each defendant must be sufficiently alleged. <u>See</u> Local Rule 220; <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). A FAC must identify each defendant, the challenged conduct of each defendant, and describe how the challenged conduct deprived plaintiff of his rights. A FAC must be on the form complaint provided with this order, labeled "First Amended Complaint," and provide the same case number reflected on this order. The SAC must be complete in itself without reference to the original complaint. <u>See</u> Local Rule 15-220;

A FAC will be screened by the court pursuant to 28 U.S.C. § 1915A. Failure to file a FAC within thirty days will result in a recommendation that this entire action be dismissed without prejudice.

## IV. **Additional Filings**

Also pending is petitioner's "motion for intervention and request for judicial notice." ECF No. 15. This rambling filing alleges, inter alia, that systemic bias, retaliation, fraud and embezzlement is pervasive throughout CDCR based on petitioner's experience at the ten prisons in which he's been incarcerated; that petitioner is unable to obtain necessary mental health treatment or rehabilitation and vocational services; that petitioner was recently assaulted by several correctional officers (apparently officers Cook, Beckham, Laughren); and that petitioner's life continues to be in jeopardy. Petitioner requests generally that this court "intervene" and, inter alia, that LCSW Jacques and "all officers" be added as defendants and prison camera recordings be preserved.

This motion will be denied for the reasons set forth above in support of the undersigned's recommendation concerning petitioner's motion for preliminary injunctive relief. Without a valid pleading, claims or defendants in this case, the court has no authority to intervene or rule on the matters presently asserted by petitioner.

////

////

For the same reasons, the undersigned acknowledges but does not further respond to petitioner's other wide-ranging filings. See ECF Nos. 17, 18, 21, 22. All pending requests will be denied as premature.

### V. Admonition to Petitioner

Petitioner's excessive filings have required a disproportionate amount of attention and time from this court and the Office of the California Attorney General, compared to the many other cases also pending before this court. *Petitioner is hereby directed to refrain from filing further documents in this case unless so directed by the court or authorized by court rules of the Federal Rules of Civil Procedure*. Failure to abide by this admonishment may result in the imposition of monetary or nonmonetary sanctions, including a recommendation that this action be dismissed. See Local Rule 110 ("Failure . . . of a party to comply with these [Local] Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court.").

### VI. Summary for Pro Se Litigant

You began this case as a habeas corpus action, then you filed a proposed civil rights complaint. Different filing fees apply to the two kinds of actions, as well as different rules governing in forma pauperis status. If you want this to be a civil rights lawsuit, you must let the court know by completing the attached Notice of Election and Submission and returning it within 30 days.

Your initial proposed complaint does not state any claim that can go forward. If you ask to change this case to a civil rights action, you must file a proposed First Amended Complaint (FAC) with your Notice of Election and Submission. The court will then convert this case to a civil rights action, address your request to proceed in forma pauperis, and screen your FAC pursuant to 28 U.S.C. § 1915A.

If you wish, you may also request the voluntary dismissal of this action without prejudice.

### VII. Conclusion

**For the foregoing reasons, IT IS HEREBY ORDERED that:**

1. Petitioner shall, within thirty (30) days after service of this order, complete and return

the attached Notice of Election and Submission, and thereby inform the court whether petitioner chooses to convert this case to a civil rights action under 42 U.S.C. § 1983.

2. If petitioner chooses to convert this case to a civil rights action he shall also, within thirty (30) days after service of this order, submit a proposed First Amended Complaint (FAC) on the form provided herewith.

3. Petitioner may, alternatively, request that this action be voluntarily dismissed without prejudice.

4. The court defers ruling on petitioner's motion to proceed in forma pauperis, see ECF Nos. 16, 19, pending petitioner's response to this order.

5. The motion at ECF No. 15, to the extent it seeks relief other than preliminary injunctive relief, is DENIED. All other outstanding requests for non-dispositive court actions are denied as premature.

6. The Clerk of the Court is directed to:

a. Send to petitioner, with a copy of this order, a blank form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983;

b. Randomly assign a district judge to this case.

**Further, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's motion for preliminary injunctive relief, ECF No. 20, be DENIED.**

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, petitioner may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 15, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>GAVIN NEWSOME,<br><br>　　　　　Respondent. | No.  2:20-cv-1557 AC P<br><br><br>NOTICE OF ELECTION<br><br>and SUBMISSION |

　　　I, Andre Wells, request that this case be converted to a civil rights action under 42 U.S.C. § 1983:

　　　\_\_\_\_\_ **Yes**; and I am submitting a proposed First Amended Complaint.

　　　\_\_\_\_\_ **No**; I request the voluntary dismissal of this case without prejudice.

　　　I, Andre Wells, have included a proposed First Amended Complaint:

　　　\_\_\_\_\_ **Yes**

　　　\_\_\_\_\_ **No**

_____　　　　_____
Date　　　　　　　　　　　　　　　　　　　　　Signature

1